**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4583
_____

BOBBI-JO SMILEY;  AMBER BLOW;
KELSEY TURNER,
                                        Appellants

v.

E.I. DUPONT DE NEMOURS AND COMPANY;
ADECCO USA, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.:  3-12-cv-02380)
District Judge: Honorable James M. Munley
_____

Argued July 14, 2016
_____

Before: VANASKIE, KRAUSE, and RENDELL,
*Circuit Judges*

(Opinion Filed: October 7, 2016)

Thomas M. Marrone, Esq.  [ARGUED]
More Marrone
1601 Market Street
#2500
Philadelphia, PA 19103

Patricia V. Pierce, Esq.
Greenblatt Pierce Engle Funt & Flores
123 South Broad Street
Suite 2500
Philadelphia, PA 19109

> *Counsel for Appellants, Bobbi-Jo Smiley, Amber Blow,
> and Kelsey Turner*


David S. Fryman      [ARGUED]
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103

Amy L. Bashore
Ballard Spahr
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002

> *Counsel for Appellee, E. I. du Pont de Nemours and
> Company*

A. Patricia Diulus-Myers
Jackson Lewis
1001 Liberty Avenue
Suite 1000
Pittsburgh, PA 15222

Eric R. Magnus
Jackson Lewis
115 Peachtree Street, N.E.
Suite 1000
Atlanta, GA 30309

    *Counsel for Appellee, Adecco USA, Inc.*


Rachel Goldberg, Esq.    [ARGUED]
United States Department of Labor
Division of Fair Labor Standards
Room N2716
200 Constitution Avenue, N.W.
Washington, DC 20210

    *Counsel for Amicus Curiae, Secretary, United States Department of Labor*

_____

O P I N I O N
_____

3

RENDELL, *Circuit Judge*.

Plaintiffs Bobbi-Jo Smiley, Amber Blow, and Kelsey Turner appeal the District Court's grant of summary judgment in favor of Appellees E.I. DuPont De Nemours & Company and Adecco USA, Inc. (collectively, "DuPont") on their claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.* Plaintiffs filed a putative collective action and class action against DuPont, seeking overtime compensation for time they spent donning and doffing their uniforms and protective gear and performing "shift relief" before and after their regularly-scheduled shifts. DuPont contended that it could offset compensation it gave Plaintiffs for meal breaks during their shift—for which DuPont was not required to provide compensation under the FLSA—against such required overtime.

The District Court agreed with DuPont. We conclude that the FLSA and applicable regulations, as well as our precedent in *Wheeler v. Hampton Twp.*, 399 F.3d 238 (3d Cir. 2005), compel the opposite result and will therefore reverse the District Court's grant of summary judgment and remand for further proceedings.

## I.

Appellants worked twelve-hour shifts at DuPont's manufacturing plant in Towanda, Pennsylvania.[1] In addition

---

[1] DuPont directly employed Bobbi-Jo Smiley and Amber Blow. Adecco employed hourly contract employees at the Towanda plant, including Kelsey Turner.

4

to working their twelve-hour shifts, Plaintiffs had to be on-site before and after their shifts to "don and doff" uniforms and protective gear. DuPont also required them to participate in "shift relief," which involved employees from the outgoing shift sharing information about the status of work with incoming shift employees. The time spent donning, doffing, and providing shift relief varied, but ranged from approximately thirty to sixty minutes a day.

DuPont chose to compensate Plaintiffs for meal breaks[2]—despite no FLSA requirement to do so—during their twelve-hour shifts. The employee handbook set forth DuPont's company policy for compensating meal breaks, stating that "[e]mployees working in areas requiring 24 hour per day staffing and [who] are required to make shift relief will be paid for their lunch time as part of their scheduled work shift." Employees who worked twelve-hour, four-shift schedules, as did Plaintiffs in this case, were entitled to one thirty minute paid lunch break per shift, in addition to two non-consecutive thirty minute breaks. The paid break time always exceeded the amount of time Plaintiffs spent donning and doffing and providing shift relief.

DuPont treated the compensation for meal breaks similarly to other types of compensation given to employees. It included the compensation given for paid meal breaks when it calculated employees' regular rate of pay, and meal break time was included in employees' paystubs as part of their total hours worked each week.

---

[2] The parties agree that Plaintiffs' meal breaks were *bona fide* breaks.

5

Plaintiffs brought this putative collective action and class action against DuPont, claiming that DuPont violated the FLSA and WPCL by requiring Plaintiffs to work before and after their twelve-hour shifts without paying them overtime, i.e., time and one-half, compensation. Plaintiffs sought to recover overtime compensation for time spent donning and doffing their uniforms and protective gear and performing shift relief. DuPont argued that their claims fail because it could offset the paid breaks DuPont voluntarily provided Plaintiffs against the unpaid donning and doffing and shift-relief time. Plaintiffs filed a motion to conditionally certify a FLSA collective action, which the District Court granted. Plaintiffs' counsel sent a notice of the FLSA class to the prospective class members, and more than 160 workers opted in. Following the close of discovery, DuPont filed its motion for summary judgment.

The District Court granted DuPont's motion for summary judgment, holding that the FLSA allowed DuPont to use paid non-work time to offset the required overtime and dismissing the lawsuit entirely.[3] The District Court held that Plaintiffs were not owed any additional compensation because the amount of paid non-work time exceeded unpaid work time. Although it recognized that "[t]he FLSA does not expressly grant employers permission to use paid non-work time to offset unpaid work time," App. 12, the District Court nonetheless concluded offset was not specifically prohibited and therefore granted summary judgment in favor of DuPont.

---

[3] The District Court assumed, without deciding, that Plaintiffs' pre- and post-shift work was compensable under the FLSA.

Prior to oral argument, we invited the Department of Labor ("DOL") to file an amicus brief to assist us in understanding the intricacies of the important FLSA issue presented by this case. At our request, the DOL and DuPont each filed letter briefs further addressing how we should analyze the issue of offsetting paid non-work time against unpaid time worked under the FLSA. We are to give deference to the DOL's position and guidelines under *Skidmore v. Swift*, 323 U.S. 134 (1944). *See Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 186 (3d Cir. 2000) ("[I]nformal agency interpretations in 'opinion letters and similar documents' are . . . . 'entitled to respect' under *Skidmore v. Swift* . . . but only to the extent they have the 'power to persuade.'") (internal footnote omitted). Under *Skidmore*, "[t]he weight of [an agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's interpretation of the FLSA and its grant of summary judgment. *Rosano v. Twp. of Teaneck*, 754 F.3d 177, 184 (3d Cir. 2014). Additionally, we note that "the FLSA must be construed liberally in favor of employees" and "exemptions should be construed narrowly, that is, against the employer." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

7

## II.

To provide context for the ultimate issue before us, we begin by reviewing the contours of the FLSA and the circumstances in which an employer may offset compensation already given to an employee against required overtime. [4]

**A. Overtime and Calculating Regular Rate Under the FLSA**

We have noted that the FLSA has a "broad remedial purpose." *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3d Cir. 2007). "The central aim of the Act was to

---

[4] Plaintiffs' amended complaint also alleges claims under the WPCL. The District Court below did not evaluate the WPCL claim, and the parties have not significantly briefed the WPCL claim on appeal. We have recognized that "[t]he FLSA and WPCL are parallel federal and state laws." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003). However, their parallel nature does not mean that they are identical, and material differences between the two claims could exist. *See, e.g.*, *id.* at 309–10 ("Even then, whether an implied contract may give rise to a claim under the WPCL has never been addressed by the Pennsylvania state courts and will require additional testimony and proof to substantiate beyond that required for the FLSA action."); *id.* at 309 n.13 ("There are some differences in the comprehensiveness of the federal and state remedies as well since the FLSA remedy is only for overtime pay and the WPCL remedy is broader."). As the FLSA claim was the thrust of both the District Court opinion and briefing before this Court, we express no view on the merits of the WPCL claim.

achieve . . . certain minimum labor standards." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). The Act established baseline standards through "federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013).

Among the bedrock principles of the FLSA is the requirement that employers pay employees for all hours worked. 29 C.F.R. § 778.223 ("Under the Act an employee must be compensated for all hours worked."); *see also Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 913 (9th Cir. 2004) ("One of the principal purposes of the FLSA is to ensure that employees are provided appropriate compensation for *all* hours worked.") (emphasis in original). Pursuant to the FLSA, employers cannot employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In other words, employers are required to compensate employees for time in excess of forty hours with overtime compensation, which is paid at a rate of one and one-half times the employee's regular rate of pay.

The regular rate at which an employee is paid for "straight time"—or the first forty hours of work in a week—is integral to the issue of overtime payment under the FLSA. The regular rate is determined by way of a calculation. It is a "rate per hour" that "is determined by dividing [the] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was

9

paid." 29 C.F.R. § 778.109. Thus, the regular rate is a readily definable mathematical calculation that is explicitly controlled by the FLSA. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424–25 (1945) ("Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts."). As the Supreme Court has explained, the regular rate "is not an arbitrary label chosen by the parties; it is an actual fact," that "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Id.* at 424; 29 C.F.R. § 778.108 (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948), and *Walling*, 325 U.S. at 419). There are two components to the calculation: (1) the dividend, which includes total remuneration minus statutory exclusions; and (2) the divisor, which includes all hours worked. *See* 29 C.F.R. § 778.109.

The FLSA characterizes the compensation that must be included in the dividend of the regular rate calculation broadly. It "include[s] *all* remuneration for employment paid to, or on behalf of, the employee" except the exclusions that are listed in section 207(e)(1)-(8). 29 U.S.C. § 207(e) (emphasis added). Further, "*[o]nly the statutory exclusions are authorized.* . . . [A]ll remuneration for employment paid which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is [to be] determined." 29 C.F.R. § 778.200(c) (emphasis added). We have recognized that "there are several exceptions to the otherwise all-inclusive rule set forth in section 207(e)," but

10

the statutory exclusions "are narrowly construed, and the employer bears the burden of establishing [that] an exemption [applies]." *Minizza v. Stone Container Corp. Corrugated Container Div. E. Plant*, 842 F.2d 1456, 1459 (3d Cir. 1988) (internal citations omitted). Thus, although a handful of types of compensation are statutorily excluded from the definition of "all remuneration," all other compensation is included in the regular rate.

The divisor in the regular rate calculation is comprised of all "hours worked." 29 C.F.R. § 778.223. "Hours worked" includes all hours worked "under [an employee's] contract (express or implied) or under any applicable statute." 29 C.F.R. § 778.315. In general, "hours worked" includes time when an employee is required to be on duty, but it is not limited to "active productive labor" and may include circumstances that are not productive work time. *See* 29 C.F.R. § 778.223. Employers have a measure of flexibility in determining whether otherwise non-productive work time will be considered "hours worked" under the FLSA. For instance, meal periods—while not necessarily productive work time—may nevertheless be considered "hours worked" under the Act. *Id.* ("Some of the hours spent by employees . . . in meal periods . . . are regarded as working time and some are not. . . . To the extent that those hours are regarded as working time, payment made as compensation for these hours obviously cannot be characterized as 'payments not for hours worked.'"). The decision to treat otherwise non-productive work time as "hours worked" is fact dependent. Relevant here, the regulations provide that "[p]reliminary and postliminary activities and time spent in eating meals between working hours fall into this category [of work that an employer may compensate his employees for even though he

is not obligated to do so under the FLSA.]  The agreement of the parties to provide compensation for such hours may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked."  29 C.F.R. § 778.320.

Thus, if the time at issue is considered hours worked under the Act, the corresponding compensation is included in the regular rate of pay.  29 C.F.R. § 778.223.  Whether or not the time is considered hours worked under the Act, however, if the time is regarded by the parties as working time, "the payment is nevertheless included in the regular rate of pay unless it qualifies for exclusion from the regular rate as one of a type of 'payments made for occasional periods when no work is performed due to failure of the employer to provide sufficient work, or other similar cause' as discussed in § 778.218 or is excludable on some other basis under section 7(e)(2)."[5]  *Id.*

---

[5] The regulations appear somewhat inconsistent as to whether payments made for meal breaks may be excluded from the regular rate pursuant to the exception listed at section 207(e)(2).  One part of the regulations states that the exclusion described in section 207(e)(2) "deals with the type of absences which are infrequent or sporadic or unpredictable. It has no relation to regular 'absences' such as lunch periods." 29 C.F.R. § 778.218.  Another section, 29 C.F.R. § 778.320(b), makes clear that when there is an agreement to treat compensation given for meal breaks not as "hours worked," the compensation is excluded from the regular rate under section 207(e)(2).  Whether compensation for meal breaks is excludable from the regular rate pursuant to section

## B. Permissible Offsetting Under the FLSA

The FLSA explicitly states when an employer may use certain compensation already given to an employee as a credit against its overtime liability owed to that employee under the Act. Offsetting with already-disbursed compensation against incurred overtime is discussed in section 207(h), which states:

> (1) Except as provided in paragraph (2), sums excluded from the regular rate *pursuant to subsection (e) shall not be creditable* toward wages required under section 6 or overtime compensation required under this section.
>
> (2) Extra compensation paid as described in paragraphs *(5), (6), and (7) of subsection (e) of this section shall be creditable* toward overtime compensation payable pursuant to this section.

29 U.S.C. § 207(h)(1)-(2) (emphasis added). As noted above, subsection (e) sets forth the exclusions from the regular rate. Thus, the FLSA explicitly permits offsetting against overtime only with certain compensation that is statutorily excluded from the regular rate, that is, only three categories of compensation, [6] which are "extra compensation provided by a

---

207(e)(2) is ultimately irrelevant in situations such as this one, where the employer has included it in the regular rate.

[6] The three portions of subsection (e) relevant to offsetting are:

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-

premium rate." *Id.* § 207(e)(5)-(7). Unlike the compensation addressed by the other exclusions, the three categories of excludable compensation that qualify for the offsetting provision at section 207(h)(2) are paid at a premium rate. Accordingly, we have previously characterized these three categories listed in section 207(e)(5)-(7) as "dollar-for-dollar credit[s] for premium pay" and limited permissible employer offsets to only those premium payments. *See Wheeler v. Hampton Twp.*, 399 F.3d 238, 245 (3d Cir. 2005). The regulations also support limiting employers' ability to offset overtime liability. Only extra compensation that falls within sections 207(e)(5), (6), and (7) may be creditable—"[n]o other types of remuneration for employment may be so credited." *See* 29 C.F.R. § 778.201(c).

## IV.

Nothing in the FLSA authorizes the type of offsetting DuPont advances here, where an employer seeks to credit compensation that it *included* in calculating an employee's regular rate of pay against its overtime liability. Rather, the statute only provides for an offset of an employer's overtime liability using other compensation excluded from the regular rate pursuant to sections 207(e)(5)-(7) and paid to an employee at a premium rate.

---

> half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek; . . . .

29 U.S.C. § 207(e)(5)-(7).

In *Wheeler*, as here, the employer, Hampton Township, had voluntarily included non-work pay—which did not need to be included in the regular rate under the Act—in the regular rate calculation. It sought to offset compensation it was required to include in the regular rate, but did not, with compensation it voluntarily chose to include in the regular rate. *Wheeler*, 399 F.3d at 243. We held that this was not permitted. We could not find any "textual reason to 'credit' the Township for including such pay in its regular rate." *Id.* at 244. We explained that "while § 207(e) protects the Township from having to include non-work pay in the regular rate, it does not authorize the Township now to require such augments to be stripped out, or to take a credit for including such augments." *Id.* In essence, at the point at which compensation is included in the regular rate (regardless of whether the Act required it be included), an employer may not use that compensation to offset other compensation owed under the Act. We determined that "[w]here a credit is allowed, the statute says so." *Id.* at 245. The Township was not entitled to a credit under the explicit offset contemplated by section 207(h), so we concluded that the FLSA did not permit the offset. *Id.* ("The Township seeks a credit for allegedly including non-work pay—presumably at a non-premium rate—in the CBA's basic annual salary. The FLSA does not provide for such an offset.").

We based our conclusion that offsetting was limited to the type addressed by section 207(h) on our recognition that Section 207(h) offsetting pertained only to "extra compensation," which is distinct from regular straight time pay. *Wheeler*, 399 F.3d at 245. Indeed, "such 'extra compensation' is a kind of overtime compensation, and thus

16

need not be added to the regular rate. Likewise, such compensation may be credited against the Act's required overtime pay." *Id.* Courts have widely recognized that an employer may offset its overtime liability with accumulated premium pay given to employees under sections 207(e)(5)-(7). *See, e.g.*, *Singer v. City of Waco,* 324 F.3d 813, 828 (5th Cir. 2003); *Kohlheim v. Glynn Cty*, 915 F.2d 1473, 1481 (11th Cir. 1990). The offset created by section 207(h) is logical because it authorizes employers to apply one type of premium pay to offset another, both of which are excluded from the regular rate.[7] *See* 29 U.S.C. § 207(e). It is undisputed that the compensation paid for meal breaks was included in plaintiffs' regular rate of pay, and thus could not qualify as "extra compensation." Accordingly, DuPont may not avail itself of the offset provisions explicitly allowed by § 207(h)(2).

DuPont argues that the FLSA's failure to expressly prohibit offsetting where the compensation used to offset is included in the regular rate indicates that offsetting is allowed. We disagree with DuPont's notion that the FLSA's silence indicates permission. While it is true that the statute

---

[7] The "premium" nature of compensation referenced in § 207(h)(2) is important. Indeed, at least one court has not allowed offsetting unless the premium payment made was one and one-half times the regular rate of pay, or equivalent to the overtime rate. *See O'Brien v. Town of Agawam*, 508 F. Supp. 2d 142, 146 (D. Mass. 2007) ("Because the payments at issue are less than one-and-one-half times Plaintiffs' regular rate of pay, they cannot be used to offset the Town's overall liability, regardless of when or how these payments were made.").

17

does not explicitly set forth this prohibition, the policy rationales underlying the FLSA do not permit crediting compensation used in calculating an employee's regular rate of pay because it would allow employers to double-count the compensation. The DOL convincingly urges this viewpoint. It observes that "[t]here is no authority for the proposition that compensation already paid for hours of work can be used as an offset and thereby be counted *a second time* as statutorily required compensation for other hours of work." DOL Letter Br. 6. Further, "there is no reason to distinguish between compensation for productive work time and compensation for bona fide meal breaks." *Id.* Compensation included in, and used in calculating, the regular rate of pay is reflective of the first forty hours worked. We agree with the reasoning of the DOL that allowing employers to then credit that compensation against overtime would necessarily shortchange employees.

The statutory scheme that limits crediting to the three types of "extra compensation" excluded from the regular rate against overtime obligations makes sense. "To permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium—a pyramiding that Congress could not have intended." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948). Excludable premium compensation may offset other excludable premium compensation. To allow compensation included in the regular rate to offset premium-rate pay, however, would facilitate a "pyramiding" in the opposite direction by allowing employers to pay straight time and overtime together. This approach fundamentally conflicts with the FLSA's concern that employees be compensated for all hours worked. As the Ninth Circuit observed in *Ballaris*, "it would undermine the purpose of the

FLSA if an employer could use agreed-upon compensation for non-work time (or work time) as a credit so as to avoid paying compensation required by the FLSA." *Ballaris*, 370 F.3d at 914.

While *Ballaris* is distinguishable because the employer in that case excluded meal break compensation when calculating the employee's regular rate and the parties agreed that the meal break period was excluded from each employee's hours worked, its reasoning nonetheless applies here. The Ninth Circuit concluded that "[c]rediting money already due an employee for some other reason against the wage he is owed is not paying that employee the compensation to which he is entitled by statute. It is, instead, false and deceptive 'creative' bookkeeping that, if tolerated, would frustrate the goals and purposes of the FLSA." 370 F.3d at 914 (internal footnote omitted). Here, permitting DuPont to use pay given for straight time—and included in the regular rate of pay—as an offset against overtime pay is precisely the type of "creative bookkeeping" that the Ninth Circuit cautioned against and the FLSA sought to eradicate.

While the District Court cited *Wheeler* in passing, it did not apply our holding but, instead, looked at the two circumstances that the statute expressly states preclude offsetting by an employer:

> First, employers cannot use paid non-work time to offset unpaid work time when the paid non-work time is excluded from the regular rate of pay. Second, if the parties agree to treat paid non-work time as "hours worked," and this time

19

is included in the regular rate of pay, the employer cannot offset.

App. 12. The District Court concluded that because neither of these circumstances was present in this case, the FLSA does not expressly prohibit an offset. It recited the prohibition set forth in 29 U.S.C. § 207(h)(1), which generally bars employers from offsetting incurred overtime liability with sums excluded from the regular rate of pay. The District Court observed that "defendants cannot offset if the FLSA expressly excludes plaintiffs meal periods—non-work time—from plaintiffs' regular rate of pay." App. 12-13. After reviewing section 207(e)'s list of mandatory exclusions from the regular rate of pay, it concluded that the one category of exclusions that was arguably implicated by the facts, 29 U.S.C. § 207(e)(2), was not applicable because the meal periods were not the type of absences covered by the exclusion. "Accordingly, section 207(e)(2) does not prohibit defendants from including plaintiffs' meal period time in their regular rate of pay, rendering section 207(h)'s prohibition against an offset inapplicable." App. 14. Thus, like DuPont, the District Court focused on the lack of express prohibition. In light of our holding in *Wheeler* that offsetting is limited to circumstances where an employer is paying "extra compensation" at a premium rate, we reject the District Court's reasoning that the absence of a direct prohibition controls the analysis of the offset issue.

Moreover, we do not accept the significance that the District Court and DuPont place on two lingering issues: first, whether the parties had an agreement to treat the breaks in question as hours worked, and second, whether the FLSA required DuPont to compensate the employees for the breaks

20

in question. With respect to the former, both the Ninth Circuit in *Ballaris* and the FLSA's implementing regulations advance the notion that employers may not offset if there is an agreement to treat otherwise uncompensable time as "hours worked," and the compensation at issue is included in the regular rate. But inclusion in the regular rate is sufficient for our purposes, as noted above, so the existence of an agreement is beside the point. [8] As to the latter, 29 C.F.R § 785.19 simply states that employers are not required by the FLSA to treat meal breaks as hours worked, but it does not prohibit them from doing so. Indeed, section 778.320 expressly contemplates that an employer may agree to treat non-work time, including meal breaks, as compensable hours worked.

The District Court relied on the Seventh Circuit's opinion in *Barefield v. Village of Winnetka*, 81 F.3d 704 (7th Cir. 1996), and the Eleventh Circuit's opinion in *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994), in concluding that DuPont could offset using meal break compensation. The two opinions did not analyze the offset issue in detail, but instead focused on compensability. The courts in both *Barefield* and *Avery* presumed an offset was permissible and

---

[8] Ultimately, the District Court rejected Plaintiffs' argument that there was an agreement to treat the meal periods as hours worked, stating that DuPont's decision to compensate for meal breaks did not convert them into hours worked, the policy did not create a contract deeming the time hours worked, and the meal periods were *bona fide*. "Ergo, the FLSA does not expressly preclude defendants from offsetting plaintiffs['] unpaid donning and doffing and shift relief time with the paid meal period time." App. 25.

focused on the fact that the FLSA did not require employers to compensate employees for the *bona fide* meal break periods at issue. Notably, neither opinion addresses the most relevant provision in the FLSA on the issue of offsetting—29 U.S.C. 207(h). Given our holding in *Wheeler*, limiting offsetting to "extra compensation" not included in the regular rate, it is irrelevant whether the breaks were compensable.

## V.

For the reasons discussed above, we will reverse the District Court's decision of November 5, 2014, and remand for further proceedings consistent with this opinion.