**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1046, 24-1059

_____


SECRETARY, UNITED STATES DEPARTMENT
OF LABOR,
             Cross-Appellant (No. 24-1059)
v.

EAST PENN MANUFACTURING COMPANY, INC.,
             Appellant (No. 24-1046)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5:18-cv-01194)
District Judge: Honorable Gene E.K. Pratter
_____

Argued: September 23, 2024 (No. 24-1046)
Submitted: September 23, 2024 (No. 24-1059)

Before: KRAUSE, BIBAS, and AMBRO, *Circuit Judges*

(Filed: December 19, 2024)

Michael J. Mueller          **[ARGUED]**
Evangeline C. Paschal
Perie Reiko Koyama
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037

Tonya M. Gray
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue
Suite 3700
Dallas, TX 75202

Thomas Vanaskie
STEVENS & LEE, P.C.
425 Biden Street
Scranton, PA 18503

Daniel B. Huyett
STEVENS & LEE, P.C.
111 N. Sixth Street
Reading, PA 19601
        *Counsel for Appellant* (No. 24-1046)

Jesse Z. Grauman          **[ARGUED]**
U.S. DEPARTMENT OF LABOR
DIVISION OF FAIR LABOR STANDARDS
Room N2716
200 Constitution Avenue NW
Washington, DC 20210

Jennifer L. Stocker
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue NW
Washington, DC 20210
    *Counsel for Cross-Appellant* (No. 24-1059)

————————

OPINION OF THE COURT

————————

BIBAS, *Circuit Judge*.

Hourly employees earn hourly pay. East Penn Manufacturing tries to dodge this basic requirement. First, it claims that employees bear the burden of proving that their unpaid working time was more than *de minimis* (trivial). And second, it claims that employers need pay only for the reasonable time it takes to complete assigned tasks, not the actual time. Not so. Because the District Court correctly rejected both claims as well as various other ones, we will affirm.

## I. East Penn Did Not Fully Pay Workers for Changing and Showering

East Penn makes and recycles lead-acid batteries. Because that work involves lead and other hazards, some workers must wear uniforms and shower after their shifts. The uniform is a T-shirt and work pants. Many workers must also wear protective equipment, like safety glasses and shoes; some must use hard hats and respirators too.

Until 2003, East Penn did not pay hourly workers for time they spent changing or showering. That year, it started giving workers a five-minute grace period at the start of each shift to dress and get to their workstations, plus five minutes at the end to undress and shower. In 2016, it doubled the post-shift grace period to ten minutes. But it did not record how much time workers actually spent changing and showering.

The government sued East Penn under the Fair Labor Standards Act for failing to pay employees for all time spent changing and showering. 29 U.S.C. §§ 207, 211(c), 215(a)(2), (5). As part of the suit, the government hired an expert, Dr. Robert Radwin, who estimated that workers averaged 15.6 minutes dressing pre-shift and 11 minutes undressing and showering—more time than they were paid for.

At summary judgment, both sides agreed that changing and showering are "integral and indispensable" to the workers' principal activities. App. 148 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). So the District Court granted summary judgment on that issue to the government and told East Penn that it had to pay employees for that time. *Steiner*, 350 U.S. at 256. (Though East Penn challenges *Steiner*, it recognizes that precedent binds us.) At trial, the jury found that East Penn owed 11,780 hourly uniformed workers roughly $22.25 million in backpay. The District Court declined to award liquidated damages.

East Penn appeals, and the government cross-appeals the denial of liquidated damages. We will affirm across the board.

4

## II. EMPLOYERS BEAR THE BURDEN TO PROVE THAT UNPAID TIME IS *DE MINIMIS*

The District Court instructed the jury that East Penn bore the burden of proving that any unpaid time was "trivial, minor, immaterial, too small to be meaningful or worth the effort, to be taxed, measured, or counted." App. 427. East Penn challenges that instruction. We review claims that a jury instruction misstated the law de novo. *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005). This instruction was right.

Though the Fair Labor Standards Act says nothing about excluding trivial time, courts have recognized an atextual *de minimis* exception. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *superseded by statute on other grounds as recognized in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). The line between negligible and material time is hazy. Employers must pay workers for "giv[ing] up a substantial measure of [their] time and effort," but not for "only a few seconds or minutes of work beyond the scheduled working hours." *Id.*

In the absence of a clear statutory directive, when deciding who bears the burden of proving a statutory defense, we consider five factors. *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 361 (3d Cir. 2015). Because the *de minimis* defense is atextual, these factors do not fit perfectly, so we adapt them as needed. Applying them, we hold that the burden of proving the *de minimis* defense belongs on the employer.

Most importantly, we consider whether the doctrine is "framed as an exception to a statute's general prohibition or an

element of a prima facie case." *Id.* at 361. Because the Act does not mention a *de minimis* defense, we cannot look for answers in the statutory text. But we can ask whether the doctrine overlaps with the elements of the plaintiff's case. *See In re Sterten*, 546 F.3d 278, 284–85 (3d Cir. 2008). It does not. The *de minimis* doctrine, like other affirmative defenses, "will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Affirmative Defense*, *Black's Law Dictionary* (12th ed. 2024). That suggests that the defendant bears the burden of proof.

The other *Evankavitch* factors—whether the defense will unfairly surprise plaintiff, the party who controls the relevant information, the statutory scheme, and "policy and fairness considerations"—collectively confirm that the employer bears the burden of proof. 793 F.3d at 361. Here, until the defense is raised, plaintiffs would not anticipate the relevance of administrative efficiency in recordkeeping, which is a factor bearing on whether unpaid time is *de minimis*. *See De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007). Plaintiffs would likely seek "different discovery" or alter "trial strategy [if] the defendant affirmatively pleaded the defense." *Evankavitch*, 793 F.3d at 365. After all, employers control the information needed to prove the defense. And that assumption is embedded in the statutory scheme. The Act pushes the responsibility to gather information about wages and hours onto the employer. 29 U.S.C § 211(c). These are just the kinds of "other policy or fairness considerations" that *Evankavitch* instructs us to consider. 793 F.3d at 361.

So we join the Seventh, Ninth, and Tenth Circuits in placing the burden of proof on the employer. *Kellar v. Summit*

6

*Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011); *Cadena v. Customer Connexx LLC*, 107 F.4th 902, 911, 915 (9th Cir. 2024) (relying on *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1057 n.10 (9th Cir. 2010)); *Peterson v. Nelnet Diversified Sols., LLC*, 15 F.4th 1033, 1042–43 (10th Cir. 2021).

Because the *de minimis* doctrine is an affirmative defense, employers must plead it in the answer. Fed. R. Civ. P. 8(c)(1). Yet "[o]ften[,] evidence that a particular consequence or fact is *de minimis* will not be evident from the face of the complaint, but will only emerge with discovery." *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1080 (9th Cir. 2016) (not treating the *de minimis* doctrine as an affirmative defense, in tension with statements in *Cadena* and *Rutti* that the employer bears the burden of proving time *de minimis*). So district courts "should freely give leave [to amend and add this defense] when justice so requires." Fed. R. Civ. P. 15(a)(2).

### III. EMPLOYERS MUST PAY FOR ACTUAL, NOT REASONABLE, TIME SPENT

At summary judgment, the District Court held that East Penn had to pay workers for the time they actually spent on changing and showering, not just the time reasonably needed to do so. And it instructed the jury that East Penn had "to pay each of its employees for the time spent." App. 425.

On appeal, East Penn says it did enough by paying them for the two grace periods, the time it believes was reasonable. Focusing on actual time, it worries, would reward employees for dragging their feet or tending to personal matters. But under the Act, the correct measure is actual time.

7

East Penn argues that the Supreme Court has already resolved this issue, but it has not. True, as East Penn notes, *Anderson v. Mt. Clemens Pottery* held that "under the conditions prevalent in [the] plant, compensable working time was limited to the minimum time necessarily spent in walking at an ordinary rate along the most direct route." 328 U.S. at 692. The Court explained that "[m]any employees took roundabout journeys and stopped off en route for purely personal reasons." *Id.* So it limited the payment to time that benefited the employer: time spent working within the overall walking time.

But *Anderson*'s reach is limited because it addressed activity that was not clearly work. Realizing the "immense" liabilities that could arise from *Anderson*, the next year Congress amended the statute to provide that preliminary walking activities are not work. *Steiner*, 350 U.S. at 253; 29 U.S.C. §§ 251(a), 254(a). *Anderson* reached its reasonable-time holding in the context of "*the conditions prevalent in [the] respondent's plant*" and the employees' activities. 328 U.S. at 692 (emphasis added). It recognized that "walking to work on the employer's premises" leaves a lot of room for loafing, so employers needed a reasonable limitation on compensation. *Id.* at 691.

Congress later eliminated payment for that walking time. 29 U.S.C. § 254(a). *Anderson* required reasonable time instead of actual time when tracking an activity that no longer counts as work. That carve-out does not apply here, where East Penn concedes that the changing and showering activities *are* work. Plus, the Supreme Court has distinguished the walking activities in *Anderson* from walking time incident to changing and showering. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 35 (2005). So we look to the text of the statute as our guide.

The Act's text focuses on actual time. "Among the bedrock principles of the [Act] is the requirement that employers pay employees *for all hours worked*." *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016) (emphasis added). The wage-and-hour provisions track the hours that employees work; they say nothing about a reasonableness limit. 29 U.S.C. §§ 206(a)(1), 207(a)(1). Plus, the Act orders employers to track actual hours and keep records of them. *Id.* § 211(c). That requirement "ensure[s] that all workers are paid the minimum wage for every hour worked." *Williams v. Tri-Cnty. Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984). If reasonable time sufficed, employers could instead estimate hours, but estimating violates the recordkeeping requirement. *Id.* If a worker lollygags, "the employer's recourse is to discipline or terminate the employee—not to withhold compensation." *Sec'y U.S. Dep't of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 432 (3d Cir. 2017) (internal quotation marks omitted).

We thus join the Sixth Circuit in basing liability on the actual time that workers spend. *Brock v. City of Cincinnati*, 236 F.3d 793, 802–03 (6th Cir. 2001); *see also Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 526–28 (2d Cir. 1998) (using actual time instead of reasonable time at least in the context of K-9 officers); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 914 (9th Cir. 2003) (not "disagree[ing]" that the Act focuses on work actually performed, but applying a reasonable time standard to calculate class-wide damages), *aff'd on other grounds*, 546 U.S. 21 (2005). By contrast, the Tenth Circuit has used reasonable time, but only as part of a retroactive damages calculation. *Reich v. IBP, Inc.*, 38 F.3d 1123, 1127 (10th Cir. 1994) (using reasonable time when there were no records of actual time and

explaining that there were "differences in personal routines"); *cf. Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 878 (8th Cir. 2012) (holding only that, on plain-error review, "the district court's 'reasonable time' instructions, if error, were not clear error" given the unclear case law on the issue).

## IV. EAST PENN'S OTHER CLAIMS ALSO FAIL

East Penn raises a slew of other claims. None is persuasive.

### A. Any error on the recordkeeping issue was harmless

Employers must keep records of their hourly employees' "[h]ours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2(a)(7). At summary judgment, the District Court held East Penn liable for not keeping required records of how long workers spent changing and showering. It also rejected East Penn's *de minimis* defense to that record-keeping violation.

East Penn says the court should have first let the jury decide whether the time spent was *de minimis*. 29 C.F.R. § 785.47 (providing that, in keeping records, employers may disregard "insubstantial or insignificant periods of time beyond the scheduled working hours"). But if there was error, it was harmless. The jury was instructed properly and found that the time spent was not *de minimis*. The jury found East Penn liable for $22.5 million of unpaid wages. Properly viewed in the aggregate, this sum is indeed not *de minimis*. *See De Asencio*, 500 F.3d at 375 (directing the District Court to consider unpaid time in the aggregate); *Cadena*, 107 F.4th at 911 ("[C]ourts have awarded relief for claims that, when aggregated, amounted to a substantial claim, even if the amounts might be

10

minimal on a daily basis." (internal quotation marks omitted)). Because the time in question was not *de minimis*, East Penn had to keep records of that time. So any *de minimis* defense to recordkeeping would not apply.

## B. There was enough representative evidence

Plaintiffs may prove claims under the Act by using representative evidence of some employees' experiences to show how employees in general were treated. *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701–02 (3d Cir. 1994). After trial, the District Court denied East Penn's motion for judgment as a matter of law, holding that the government had put on sufficient representative evidence. That ruling was proper too.

On appeal from the jury verdict, we "view[ ] the evidence in the light most favorable to the nonmovant" (here, the government) and must affirm if there is enough evidence "from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). This case clears that low bar. Though only a small number of employees testified, East Penn correctly concedes that "there is no bright-line test establishing the percentage of employees necessary to achieve a representative sample." Appellant's Br. 38. And though the employees were spread across twenty-four plants, they "were all subject to the same pay and uniform policies that provided insufficient time to complete clothes-changing and showering activities on East Penn's campus." App. 77–78. Plus, Dr. Radwin's expert time study gave the jury additional representative evidence. A reasonable jury could have seen all this as representative enough to support liability.

11

## C. The District Court properly admitted the government expert's testimony

East Penn raises one final challenge: The District Court should not have admitted the testimony of the government's expert, Dr. Robert Radwin. He hired six research assistants to observe eight (out of twenty-four) plants: three large, three medium, and two small. They measured the time that 370 workers spent putting on clothing and 131 workers spent taking it off and showering. Dr. Radwin then prepared a report and testified about his findings.

East Penn argues that the District Court abused its discretion because Dr. Radwin's testimony was unreliable. It objects that, by averaging data across eight plants, he obscured differences among them. And it contends that he could not validly extrapolate from eight plants to all twenty-four.

As the District Court explained, despite any methodological flaws, Dr. Radwin's testimony was admissible. The court properly understood the legal standard: whether Dr. Radwin's technique was reliable enough to help the jury reach an accurate result. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). Although East Penn challenges how he calculated and interpreted the results, such a challenge "ordinarily goes to the weight of the evidence, not to its admissibility." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017). The District Court did not abuse its discretion by admitting his evidence.

## V. THE DISTRICT COURT PROPERLY DENIED
## LIQUIDATED DAMAGES

The Secretary cross-appeals the District Court's refusal to award liquidated damages. Employers who violate the Act are liable for back pay plus "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But courts have discretion not to award liquidated damages if the employer shows that its violation "was in good faith" and that it "had reasonable grounds for believing that [its] act or omission was not a violation" of the Act. *Id.* § 260. To qualify, the "employer must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991). We review the District Court's legal conclusion that East Penn had reasonable grounds de novo, its underlying findings of historical fact for clear error, and its ultimate denial of liquidated damages for abuse of discretion. *Id.*

In finding the facts, the District Court did not clearly err. After trial, it held an evidentiary hearing, reviewed the documentary evidence, and weighed the witnesses' credibility. It found that East Penn had "relied in good faith on the advice of a properly experienced labor and employment attorney" and "tailored its policies in response to, and consistent with, the information and guidance it received from its attorney." App. 229–30 (footnotes omitted). Those findings were proper.

Based on those facts, the District Court correctly concluded that East Penn had reasonable legal grounds to think that its employment practices were lawful. Before this opinion, the Third Circuit had no controlling precedent on whether

13

employers had to pay for actual or reasonable time. East Penn asked legal counsel how to follow the law, and counsel advised East Penn that it might be able to disregard pre-shift work as *de minimis*. Even though that advice turned out to be mistaken, following it was reasonable. So the District Court properly exercised its discretion not to award liquidated damages.

* * * * *

Under the Fair Labor Standards Act, employers must pay hourly employees for the time that they actually work, not just a reasonable amount of time. If employers claim that time was trivial, they bear the burden of proving that *de minimis* defense. Because the District Court correctly held East Penn to those requirements, we will affirm.